```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ANJELITA FANDUNSEVA,                         :
                                             :       REPORT AND
                        Plaintiff,           :       RECOMMENDATION
                                             :
         -against-                           :       16-CV-635 (DLI)(PK)
                                             :
HOME ATTENDANT VENDOR AGENCY,                :
INC.,                                        :
                                             :
                        Defendant.           :
                                             :
------------------------------------------------------------ x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Anjelita Fandunseva brought this action against Defendant Home Attendant Vendor Agency, Inc., pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, as recently amended by the Wage Theft Prevention Act ("WTPA"). (*See* Compl., Dkt. 1.)

Before this Court on referral from the Honorable Dora Lizette Irizarry is Plaintiff's Motion for Default Judgment (the "Motion"). (*See* April 21, 2017 Order.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted in part.

## BACKGROUND

Defendant Home Attendant Vendor Agency, Inc. is a New York corporation that is in the business of providing home health care aides services to the elderly and disabled persons. (Compl. ¶¶ 2, 4.) It is located at 3036-B Nostrand Avenue, Brooklyn, New York. (*Id.* ¶ 2.) Plaintiff worked for Defendant as a home health aide from 2009 to March 2015. (*Id.* ¶ 5.) Plaintiff alleges that more than twenty percent of her work consisted of tasks other than companion services such as "doing laundry, shopping, cleaning the apartment, cooking, feeding and bathing the patient." (*Id.* ¶ 15.) Plaintiff frequently worked in excess of forty hours per week, but was paid the same rate for both

1

regular time and overtime. (*See* Dkts. 15-1 and 15-2.) The Complaint also alleges that Defendant failed to provide required wage notices. (*See* Compl. ¶¶ 22-23; Fandunseva Aff. ¶10, Dkt. 17.)

On February 5, 2016, Plaintiff brought this action against Defendant seeking unpaid overtime compensation under the FLSA and NYLL, statutory damages for failure to provide wage notices under the NYLL, liquidated damages under the FLSA and NYLL, pre-judgment interest, and attorneys' fees and costs. (*See* Compl.) Plaintiff subsequently requested a Certificate of Default, which was granted. (*See* Dkts. 7, 11.) On April 13, 2017, Plaintiff moved for default judgment and, at the Court's direction, continued to supplement deficient motion papers until November 29, 2017. (*See* Dkts. 13-22.)

## DISCUSSION

### I.  Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff may move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The Court must ensure that (1) jurisdictional requirements are satisfied, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-26, 133 (2d Cir. 2011); (2) Plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court exercises significant discretion "in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept.

23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *see also, Mickalis Pawn Shop*, at 129.

## II. Jurisdictional and Procedural Requirements

### a. Subject Matter Jurisdiction

In order to plead a cause of action under the FLSA, Plaintiff must establish that: "(1) the defendant is an employer subject to the FLSA; (2) plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA)(CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213. The FLSA broadly describes an employer as "any [person or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d Cir. 2013). An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An employer-employee relationship exists under FLSA if the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). The Court must consider the "totality of the circumstances" and no one factor is dispositive. *Irizarry*, 722 F.3d at 106.

The undersigned finds that the parties had an employer-employee relationship. Plaintiff alleges that Defendant hired Plaintiff in 2009, that Plaintiff worked for Defendant as a home attendant until March 2015, and that Defendant maintained payroll records. (*See* Compl. ¶ 5; Fandunseva Aff. ¶ 2; Plaintiff's Amended Memorandum of Law ("Pl.'s Amend. Mem.") at 1, Dkt.

15.) Although Plaintiff does not allege specific facts indicating Defendant's ability to control her work schedules or conditions of employment, paystubs submitted by Plaintiff show that Defendant paid Plaintiff based on an hourly rate determined by Defendant including for overtime hours. (*See* Dkts. 15-1 and 15-2; Compl. ¶ 17.) It can be inferred from the fact that Plaintiff is challenging the rate of overtime pay, Defendant, not Plaintiff, determined the rate of pay and controlled the method of payment.

The FLSA further requires that an employer meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8366837, at *4. The enterprise coverage test considers whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin,* 93 F. Supp. at 33. The individual coverage test takes into account the "employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo,* 2016 WL 8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Plaintiff alleges that Defendant is "in the business of, *inter alia*, providing home health care aide services to the elderly and disabled," the volume of which exceeds $500,000, and had at least two employees who "engaged in commerce," "participated in the rendering of services to other individuals, and participated in financial transactions involving the interstate banking and finance systems." (Compl. ¶¶ 4, 10, 12-13.) Accepting these allegations as true, two issues remain as to the applicability of the FLSA to this case: whether Defendant is an employer engaged in interstate commerce and whether any exemptions apply.

4

Ordinarily, allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce. In the context of default, however, the Court may accept these uncontested allegations as true and make reasonable inferences. *See e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York."); *Fermin*, 93 F.Supp.3d at 33 (it was "reasonable to infer that [a Peruvian restaurant] requires a wide variety of materials to operate" and "some of these materials moved or were produced in interstate commerce."); *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (JB)(SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a default judgment where Plaintiff security guard stated "only conclusory statements about interstate commerce"), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012). Here, it is reasonable to infer that Plaintiff engaged in interstate commerce by using a variety of materials moved or produced in other states to provide various household services.

The FLSA exempts from its minimum wage and maximum hour requirements any employees who provide "companionship services." 28 U.S.C. §213(a)(15). However, the Department of Labor Regulation provides that this exemption applies only when services incidental to the provision of companionship such as dressing, grooming, feeding, bathing, meal preparation, driving, and light housework do not exceed twenty percent of the total hours worked per person and per workweek. *See* 29 C.F.R. § 552.6. Plaintiff alleges that more than twenty percent of the hours she spent with each patient was devoted to providing such tasks other than companionship services. (*See* Compl. ¶ 15.) Moreover, "[a] claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n. 7 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 918 (2014). Since Defendant has failed to

5

plead any affirmative defense, Plaintiff was not required to plead facts establishing that she was a non-exempt employee.

If the Court does not find that Defendant is subject to the FLSA because of the interstate commerce requirement or the companionship service exemption, the undersigned alternatively recommends that the Court nevertheless exercise supplemental jurisdiction over the related NYLL claim. Unlike the FLSA, the NYLL does not require a plaintiff to show a nexus to interstate commerce. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Since the parties had an employer-employee relationship under the FLSA, they likewise had an employer-employee relationship under the NYLL. Moreover, the NYLL has a "companion" exemption, but it only applies to employees who "live[] in the home of the employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14. Nothing in the Complaint suggests that Plaintiff "lived in the home of the employer."

"The exercise of supplemental jurisdiction is within the sound discretion of the district court" and the Second Circuit has frequently upheld the exercise of supplemental jurisdiction in cases where, as here, the "state law claims are analytically identical to federal claims." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (internal quotation marks and citations omitted). Except as to the interstate commerce requirement, the NYLL "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime." *Id. See also* N.Y. Lab.

6

Law § 142–2.2 (same methods as employed in the FLSA for calculating overtime wages). Accordingly, the undersigned recommends a finding that the FLSA is applicable and this action is properly within the Court's subject matter jurisdiction or, alternatively, that the Court has reasoned grounds to exercise its supplemental jurisdiction over the related NYLL claim. *See* 28 U.S.C. §§ 1331, 1367.

      b. Personal Jurisdiction

This Court has personal jurisdiction over Defendant. Because Defendant is incorporated in New York State, this state has general jurisdiction over Defendant. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (alteration in original). Personal jurisdiction over Defendant was established when Defendant was validly served in this district. *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons . . . establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . .").

      c. Procedural Requirements

Plaintiff has demonstrated that she has taken the required procedural steps to provide proper notice to Defendant: a Certificate of Default was requested and entered, and Plaintiff notified Defendant of the status of this action multiple times including by mailing it the Motion papers (Dkts. 7, 9, 11, 13-21.)

**III.    Liability and Damages**

      a. Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendant's

default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiff filed her Complaint on February 5, 2016. (Dkt. 1.) Since Plaintiff was specifically named in the Complaint, she may recover for FLSA violations that occurred on or after February 5, 2013.

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiff may recover for NYLL violations that occurred on or after February 5, 2010.

    b. Plaintiff's Claims and Damages

Plaintiff seeks compensation for unpaid minimum wage, statutory damages for wage notice violations, liquidated damages, prejudgment interest, and attorneys' fees and costs. In support of the Motion, Plaintiff submitted paystubs from a twenty-week period and an affidavit outlining her damages calculations. (*See* Dkts. 15-2, 17.)

    1. *Overtime Compensation*

Under the FLSA and NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see* 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL). In the Second Circuit, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy*, 711 F.3d at 114, providing "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given

week." *Nakahata*, 723 F.3d at 201; *see also Fermin*, 93 F.Supp.3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiff alleges that she "typically" worked for "roughly" 72 hours each week, *i.e.* 32 hours of overtime, from January 1, 2010 to March 31, 2015, when she left her employment with Defendant. (Compl. ¶ 14; Fandunseva Aff. ¶¶ 2-3.) In the Memorandum of Law, Plaintiff notes that she worked "between 26 and 32 hours in overtime per week" on average. (*See* Pl.'s Amend. Mem. at 1.) Unlike determination of liability, the Court need not accept Plaintiff's allegations as true when calculating damages. Rather, the Court must make an independent assessment of damages "through an evidentiary hearing, or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages sought and awarded." *Janus v. Regalis Const., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *5 (E.D.N.Y. July 23, 2012), *R&R adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012). The paystubs from a twenty-week period which Plaintiff submitted to the Court do not support Plaintiff's calculation of overtime hours worked each week.

| Pay Period Ending | Overtime Hours |
|---|---|
| 4/11/14 | 26 |
| 4/18/14 | 26 |
| 4/25/14 | 2 |
| 5/2/14 | 38 |
| 6/6/14 | 26 |
| 6/13/14 | 26 |
| 6/20/14 | 26 |
| 6/27/14 | 14 |
| 7/4/14 | 26 |
| 7/11/14 | 26 |
| 8/1/14 | 32 |
| 8/8/14 | 32 |
| 8/15/14 | 20 |
| 8/22/14 | 32 |
| 9/5/14 | 0 |
| 9/8/14 | Sick Pay |
| 9/12/14 | 36 |

9

| | |
|---|---|
| 9/19/14 | 32 |
| 10/24/14 | 32 |
| 10/31/14 | 32 |
| Total Overtime Hours | 484 |
| Average Overtime Hours | 484/19 = 25.5 |

The undersigned calculated the average overtime hours including the week Plaintiff did not work overtime but excluding the week Plaintiff was paid sick pay. The overtime hours were added up and divided by nineteen weeks, resulting in approximately 65.5 hours worked per week, or 25.5 hours of overtime per week. Accordingly, the undersigned recommends a finding that Plaintiff worked an average of 25.5 overtime hours per week.

Defendant is liable to Plaintiff for overtime compensation that is calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.102; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ)(RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016). Although the Complaint alleges that Plaintiff's regular rate of pay during her employment with Defendant was $10 per hour (*see* Compl. ¶ 6), the paystubs indicate that the rate was $10.30 per hour.[1] (*See* Dkts. 15-1 and 15-2.) Because this rate was higher than the minimum wage rate during the same period under either statute, the overtime rate is calculated based on $10.30 per hour.[2] *See* 29 U.S.C. 206(1); N.Y. Lab. Law § 652. Plaintiff was thus entitled to, but did not receive, an overtime rate of $15.45 per hour throughout her employment—i.e., she was underpaid $5.15 per hour. Although Plaintiff states she was not properly paid between January 1, 2010 and March 31, 3015, the statute of limitations bars NYLL claims that arose before February 5, 2010 and FLSA

---

[1] The Court notes that Plaintiff was paid $11.40 per hour when she took care of an additional client. (*See* Dkts. 15-1 and 15-2.) The overtime hours do not appear to include the care of this client.
[2] Between 2010 and 2015, the minimum wage rate was $ 7.25 per hour under the FLSA, and the rate ranged between $7.15 per hour in 2010 and $8.75 per hour in 2015 under the NYLL.

10

claims that arose before February 5, 2013. Thus, under the NYLL, Plaintiff can recover for unpaid overtime wages from February 5, 2010 to March 31, 2015, a period of approximately 269 weeks. Plaintiff is entitled to recover $5.15 per hour, approximately 25.5 hours per week, for 269 weeks.

Accordingly, the undersigned recommends that Plaintiff be awarded **$35,326.43 in unpaid overtime compensation.**

       2. *Wage Notice Violations*

The only factual allegation in the Complaint with regard to Defendant's failure to provide the required notices under the WTPA is in Paragraph 23: "Defendants [sic] herein have failed and refused to pay Irina and have failed to properly provide to her with the required notices under WTPA." (Comp. ¶ 23.) "Irina" is not a named plaintiff in this action. If Plaintiff had meant to allege that Defendant has failed to provide wage notices to Plaintiff Angelita Fandunseva, she never stated that.

Plaintiff's Amended Memorandum of Law in Support of the Motion filed on June 7, 2017 makes no mention of any NYLL claims, including the wage notice violations. (*See* Pl.'s Amend. Mem.) Plaintiff's Affidavit in Support of the Motion filed on July 10, 2017 states only that she is entitled to statutory penalties under the NYLL "due to the defendant's failure to provide proper weekly and annual wage notices." (Fandunseva Aff. ¶ 10.) But it fails, too, to specify to whom these notices were not provided. The record as submitted only alleges that "Irina" (not Plaintiff) was not provided with wage notices. A mere defect in the Complaint is not necessarily fatal, but despite opportunities to correct the defect or provide factual support for this claim, Plaintiff repeatedly failed to do so.

Accordingly, the undersigned recommends a finding that Defendant is not liable for wage notice violations.

*3. Liquidated Damages*

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663. If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages. 29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a). Since Defendant failed to respond to the Motion, no good faith exists and liquidated damages are appropriate. *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*). In light of the principle that "the law providing the greatest recovery will govern," Plaintiff may be awarded liquidated damages pursuant to the NYLL. *See Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citing *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)). Because the undersigned recommends a finding that there is no violation of the notice claim, liquidated damages should be awarded to Plaintiff only on her NYLL overtime claim.

While Plaintiff seeks liquidated damages equal to 100% of her unpaid wages, she may only recover 25% of the damages due on any claims predating the April 8, 2011 amendment of the NYLL. N.Y. Lab. Law § 198(1-a) (as effective before April 9, 2011). For any claim arising after the amendment, Plaintiff could recover "one hundred percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a). Therefore, for the period from February 5, 2010 to April 8, 2011,

12

Plaintiff is entitled to liquidated damages equal to 25% of unpaid overtime. Plaintiff was owed an overtime rate of $5.15, for 25.5 hours a week, for a period of 61 weeks. Liquidated damages totaling 25% of that figure equal $2,002.71. For the period from April 9, 2011 to March 31, 2015, Plaintiff is entitled to liquidated damages equal to 100% of unpaid overtime. Plaintiff was owed an overtime rate of $5.15, for 25.5 hours a week, for a period of 208 weeks. Liquidated damages totaling 100% of that figure equal $27,315.60. Plaintiff's total liquidated damages on the overtime claim equal $29,318.31.

The undersigned recommends an award of **$29,318.31 in liquidated damages.**

4. *Pre-Judgment Interest*

Plaintiff sought pre-judgment interest in the Complaint, but subsequent submissions by counsel such as the Memorandum of Law and Plaintiff's affidavit do not mention such interest or provide calculations to support the request. (*See* Compl. at 5; Pl.'s Amend. Mem.; Fandunseva Aff.) Accordingly, the undersigned recommends that the Court consider this part of Plaintiff's damages claim abandoned. *See Melgadejo v. S & D Fruits & Vegetables Inc.,* No. 12-CV-6852 (RA) (HBP), 2015 WL 10353140, at *2 n.1 (S.D.N.Y. Oct. 23, 2015), *R&R adopted sub nom. Melgadejo v. S&D Fruits & Vegetables Inc.*, No. 12-CV-6852 (RA), 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016).

5. *Attorneys' Fees & Costs*

Plaintiff's counsel seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 663(1). District courts have broad discretion to determine the amount awarded, and the party requesting fees must provide documentation to support its claims. *Mahoney*, 2016 WL 6585810, at *18. Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *16. This "loadstar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Saucedo*, 2016 WL 8376837, at *16-17. The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Id.* (quoting *Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC*, 12-CV-5737 (ILG)(JMA), 2014 U.S. Dist. LEXIS 141455, at *18 (E.D.N.Y. Sep. 15, 2014)).

Plaintiff submitted a contemporaneous attorney timesheet and an attorney affidavit briefly discussing counsel's qualifications. (Fandunseva Aff.; Feinerman Aff., Dkt. 22) Plaintiff requests an hourly rate of $350 for attorney David Feinerman. (Feinerman Aff. ¶ 7.) Mr. Feinerman has been practicing law for almost 30 years and has been handling labor law matters over the last two and a half years. (*Id.* ¶¶ 4-5.) Compared with partner-level counsel who typically requests an hourly rate of $350, Mr. Feinerman has been practicing labor law for a relatively short time. However, given his overall experience, the undersigned finds the requested rates reasonable.

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 22 hours. (*See* Dkt. 17, 22.) Several of these hours were spent on preparing and filing amended motion papers at the Court's direction because they were originally deficient. Failure to file adequate papers the first time does not entitle counsel to fees for the time spent correcting his errors. Eliminating such time resulted in 15 hours of compensable time.

Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ)(JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). Counsel affirms that he spent $400 for the filing of this action and $135 for service of papers. (Feinerman Aff. ¶ 8.) The undersigned finds these costs reasonable.

Accordingly, the undersigned recommends an award of **$5,250 in attorneys' fees and $535 in costs**.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment be granted as to the overtime compensation claim and denied as to the wage notice claim, and that Plaintiff be awarded damages in the total sum of **$64,644.74** comprised of:

(i) **$35,326.43** in unpaid overtime compensation; and

(ii) **$29,318.31** in liquidated damages on the overtime compensation violation.

The undersigned also recommends that Plaintiff be awarded with **$5,785** in attorneys' fees and costs.

Plaintiff is directed to serve this Report and Recommendation on Defendant and file proof of service on the docket by **January 12, 2018**. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         January 4, 2018

15